1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ARLENE LIZASO,                                    )          Case No. 2:16-cv-01966-RFB-CWH
                                                  )
            Plaintiff,                            )
                                                  )
        v.                                        )
                                                  )
PROVIDENT LIFE AND CASUALTY                       )          **ORDER**
INSURANCE COMPANY, et al,                         )
                                                  )
            Defendants.                           )
_____          )

        Presently before the Court is Defendants' motion to transfer venue (ECF No. 12), filed on

October 13, 2016.  Plaintiff filed a response (ECF No. 13) on October 28, 2016, and Defendants filed

a reply (ECF No. 16) on November 21, 2016.

**I.      Introduction**

        This case arises out of an insurance dispute between Plaintiff, Arlene L. Lizaso, and

Defendants, Provident Life and Casualty Insurance Company (PLC), Provident Life and Accident

Insurance Company (PLA), and Unum Group (Unum).  PLC issued Plaintiff an insurance policy

while she was living and employed in New York as a registered nurse.  Based on an injury claim

brought by Plaintiff, Defendants began paying disability payments to Plaintiff in June, 2011.

Defendants continued payment for full disability until July, 2013, and for partial disability until

August, 2014, when they terminated benefits upon their finding that Plaintiff was fully able to return

to work.

        In January, 2015, Plaintiff moved to Nevada, and in February, 2015 she filed an appeal of

Defendants' decision to terminate her benefits.  Defendants denied her appeal, first in August, 2015,

and again in May, 2016.  Plaintiff then brought a claim against Defendants in the District Court for

Clark County, Nevada, which was subsequently removed to the District Court of Nevada.

        Defendants now request that this case be transferred to the District Court for the Southern

District of New York, arguing that the subject matter of the case is more strongly connected to New

1

York, that New York law will apply, and that the convenience of the witnesses and parties would be better served by litigating the case in New York.  Plaintiff opposes transfer, arguing that her choice of forum deserves deference, that the convenience of the parties favors Nevada, and that Nevada law will apply.

**II.      Discussion**

The Court has authority under 28 U.S.C. § 1404 to transfer a civil action "[f]or the convenience of parties and witnesses, in the interest of justice" to any other district where it might have been brought.  District courts have broad discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 23 (1988) (*See also Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000)).  To determine whether a change of venue is warranted, the Court considers "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of  litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof."  *Jones*, 211 F.3d at 498.

Here, both parties concede that this action might have been brought in the Southern District of New York.  (*Mot.* at 3, *Resp.* at 6).  Therefore, the only remaining questions for the Court are whether the convenience of the parties and witnesses would be served by transfer, and whether transfer serves the interest of justice.  The Court will consider the eight factors articulated in *Jones* to answer these questions.

**1.  The location where the relevant agreements were negotiated and executed**

Both parties concede that Plaintiff's insurance policy was negotiated, executed and delivered while she was living and working in New York.  This factor weighs strongly in favor of transfer to New York.

**2.  The state that is most familiar with the governing law**

1      The parties agree that Nevada tends to follow the Restatement (Second) of Conflict of Laws

2   in determining choice-of-law questions involving insurance contracts.  Under the Restatement, the

3   validity of a life insurance contract is generally determined by the local law of the state where the

4   insured was domiciled at the time the policy was applied for.  Restatement (Second) of Conflicts of

5   Laws § 192 (1971).  An exception to this generalization may be warranted when another state has a

6   more significant relationship to the transaction and the parties.  *Id.*  Here, both parties agree that

7   Plaintiff was domiciled in New York when the policy was executed.

8      However, because she was domiciled in Nevada when she filed her appeals, and when

9   Defendants ultimately denied those appeals, Plaintiff argues that Nevada has a more significant

10   relationship to the transaction and the parties than New York. Under this view, the exception noted

11   above might apply.  Defendants respond that Plaintiff's claim arose upon termination of her benefits,

12   which occurred while she was still in New York, so her domicile at the time of the appeal is not

13   relevant.

14      The Court rejects Plaintiff's argument and finds that Nevada does not have a more significant

15   relationship to the transaction and the parties than New York.  Plaintiff's claim is based upon

16   Defendants' denial of disability benefits, which first occurred while she was living in New York.

17   Plaintiff concedes that she moved to Nevada because she could no longer afford to live there after

18   Defendants denied her continuing benefits, suggesting that the harm which she seeks to redress

19   occurred when she was in New York.  Plaintiff did file her appeal while living in Nevada, but the

20   denial of the appeal is not the pertinent harm, it is the denial of benefits, which occurred in New

21   York.  Plaintiff does not provide any authority to show that her claim commenced at the date of her

22   appeal, or its denial.

23      Setting aside the date of appeal, the Court finds no significant connection between Nevada

24   and the transaction, only minimal contacts between Nevada and the Plaintiff, and no contacts

25   between Nevada and Defendants.  It therefore appears that if this case were heard in Nevada, the

26   Court would  apply New York law.  Since New York courts are more familiar with New York law,

27   this factor weighs in support of transfer.

28
                                                    3

1

### 3. The plaintiff's choice of forum

2        As Plaintiff notes, a "defendant must make a strong showing of inconvenience to warrant

3 upsetting the plaintiff's choice of forum." *Decker Coal Co. V. Commonwealth Edison Co.*, 805 F.2d

4 834, 843 (9th Cir. 1986).  The Court's determination of the forum's convenience requires inquiry

5 into the parties' interests, as well as public factors, including where the claim arose.  *Id.*  Further,

6 "[i]f the operative facts have not occurred within the forum of original selection and that forum has

7 no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to

8 minimal consideration." *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968).

9 Plaintiff asks the Court to distinguish *Pac. Car & Foundry* and another case cited by Defendant, *In*

10 *re Galectin Therapeutics, Inc. Sec. Litig.*, 2015 WL 260881 (D. Nev. Jan. 21, 2015), because she,

11 unlike the plaintiffs in those cases, resides in the originally chosen forum state.

12        Here, Plaintiff's connection to the chosen forum state is not so tenuous as in either *Pac. Car*

13 *& Foundry*, or *In re Galectin Therapeutics.*  However, New York is much more closely connected to

14 this case than is Nevada.  The events which constitute Plaintiff's claim all occurred in New York.  At

15 the time the claim arose, it does not appear that Nevada had any particular interest in the parties or

16 the subject matter.  However, Plaintiff does currently reside in Nevada, which establishes at least

17 some interest in the outcome of the case for Nevada.  The Court will therefore afford significant

18 deference to Plaintiff's choice of forum.  This factor weighs strongly against transfer to New York.

19

### 4. The respective parties' contacts with the forum

20        Plaintiff and her current medical providers are located in Nevada.  Defendants do not appear

21 to have any relevant contact with Nevada.  This factor weights slightly against transfer to New York.

22

### 5. The contacts relating to the plaintiff's cause of action in the chosen forum

23        Plaintiff argues that since her appeals were filed in here, Nevada has substantial contacts

24 relating to the cause of action.  However, as determined above, the appeal process was not what gave

25 rise to Plaintiff's claim.  Plaintiff's current medical providers are the only Nevada contacts to the

26 operative facts in this case.  In contrast, both parties have substantial relevant contacts with New

27 York.  The events that precipitated the claim all occurred in New York.  Plaintiff was a New York

28

resident doing business with Defendants who were licensed and operating in New York. Except for Plaintiff's current medical providers, it appears that most or all of the witnesses are in New York. This factor weighs strongly in support of transfer to New York.

**6. The differences in the costs of litigation in the two forums**

Defendant argues that most of the witnesses in this case are in New York, a point which Plaintiff does not contest. Plaintiff argues that the cost of litigation will be similar in either forum because of the availability of video depositions, and that trial in this matter is unlikely. However, Defendant does not concede the possibility of trial, and the Court is not willing to proceed on the assumption that one will not be necessary. Further, the availability of video depositions cuts both ways, making it possible to conduct discovery in either forum without the burden of travel. Given the distances involved and the number of witnesses, it seems likely that many depositions will be conducted remotely regardless of where this case is litigated. Ultimately, if this case proceeds to trial, the cost of requiring a large number of witnesses to travel to Nevada would far outweigh the costs of requiring a few to travel to New York. This factor weighs strongly in favor of transfer.

**7. The availability of compulsory process to compel attendance of unwilling non-party witnesses**

Defendant provides a substantial list of non-party witnesses that will be unavailable for either trial or deposition in Nevada. Plaintiff does not claim that any Nevada witnesses will be unable to appear in New York. Rather, Plaintiff proposes to rely on video depositions of the New York witnesses rather than compelling attendance in Nevada. In support, Plaintiff argues that the use of video depositions is quite common, making the issue availability of compulsory process essentially obsolete. None of the cases cited in support of this argument are controlling authority on this Court, and regardless, it is not clear that they stand for the proposition that the availability of compulsory process to compel attendance of non-party witnesses is an obsolete factor in the transfer analysis. It appears that most of the witnesses in this case are located in New York and cannot be compelled to appear in Nevada. This factor strongly supports transfer to New York.

**8. The ease of access to sources of proof**

Neither party suggests that any form of evidence other than witnesses will be more or less accessible in either forum.  This factor is neutral with regard to transfer.

**III.    Conclusion**

Upon review of the *Jones* factors, the Court considered the deference owed to Plaintiff's choice of forum, as well as the possibility of conducting depositions remotely, but finds that these considerations are outweighed by the difficulties and expense of litigating the case in Nevada.  The Court finds that due to the stronger connection of the facts in this case to New York, and the location of most of the witnesses in New York, transfer of this case would be more convenient for the parties and witnesses, and would better serve the interest of justice.

IT IS THEREFORE ORDERED that Defendants' motion to transfer venue (ECF No. 12) is GRANTED.  The Clerk of Court is directed to transfer this case to the Southern District of New York.

IT IS FURTHER ORDERED that all pending motions in this case are DENIED without prejudice to their reassertion in the transferee forum.

DATED: February 22, 2017.

_____
C.W. Hoffman, Jr.
United States Magistrate Judge

6